1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KEITH J. PONTHIEUX, et al.,                No.  2:18-cv-0608 JAM DB PS

12                    Plaintiffs,

13           v.                                   FINDINGS AND RECOMMENDATIONS

14    NATIONSTAR MORTGAGE, LLC;
      AZTEC FORECLOSURE
15    CORPORATION,

16                    Defendants.

17

18           Plaintiffs, Keith J. Ponthieux, Chris Duenas, and Maria Duenas, are proceeding in this

19    action pro se.  This matter was referred to the undersigned in accordance with Local Rule

20    302(c)(21) and 28 U.S.C. § 636(b)(1).  Pending before the undersigned is defendant Nationstar

21    Mortgage, LLC's motion to dismiss plaintiffs' third amended complaint.[1]  (ECF No. 63.)  For the

22    reasons stated below, the undersigned will recommend that the motion to dismiss be granted in

23    part and denied in part.

24                                     **BACKGROUND**

25           Plaintiffs, proceeding pro se, commenced this action on March 21, 2018, by filing a

26    complaint and paying the required filing fee.  (ECF No. 1.)  Plaintiffs are proceeding on a third

27    _____

28    [1] Defendant Aztec Foreclosure Corporation has joined in defendant Nationstar's motion to
      dismiss.  (ECF No. 58.)

                                              1

1   amended complaint filed on April 7, 2020.  (ECF No. 54.)  The third amended complaint alleges

2   that on September 18, 2006, plaintiffs Chris Duenas and Maria Duenas "entered into a consumer

3   loan transaction" with Countrywide Bank to purchase real property located in Benicia, CA.

4   (Third Am. Compl. (ECF No. 54) at 8-9.[2])

5        In the fall of 2009, "financial hardship" caused plaintiffs Chris and Maria Duenas to "fall

6   behind" on their payment obligation.  (Id. at 10.)  "Plaintiffs last made a payment in November of

7   2009[.]"  (Id.)  On October 28, 2011, Mortgage Electronic Registration Systems, Inc., executed an

8   assignment of the real property's Deed of Trust to Bank of New York Mellon.  (Id.)  On July 29,

9   2013, an assignment of Deed of Trust "was executed by Bank of America" and not Bank of New

10  York Mellon.  (Id. at 11.)  This assignment transferred all "interest in the Deed of Trust, but not

11  the Note," to defendant Nationstar Mortgage, LLC ("Nationstar").  (Id.)

12       On December 24, 2013, Chris and Maria Duenas "transferred their vested interest in their

13  Property to Plaintiff" Keith Ponthieux via "Quit Claim deed."  (Id. at 10.)  On March 12, 2014,

14  plaintiffs received a Notice of Servicing Transfer, stating that effective April 1, 2014, Nationstar

15  would begin servicing plaintiffs' loan.  (Id. at 12.)  On December 21, 2017, "[d]efendants . . .

16  recorded . . . a Substitution of Trustee . . . that attempted to substitute Defendant AZTEC as the

17  new 'foreclosing trustee.'"  (Id. at 13.)  That same day defendants recorded a Notice of Default

18  due to plaintiffs' "failure to make a payment on the debt obligation[.]"  (Id. at 14.)

19       Pursuant to these allegations, the third amended complaint alleges causes of action for

20  violation of the Fair Debt Collections Practices Act ("FDCPA"), California's Rosenthal Fair Debt

21  Collections Practices Act, California Civil Code §§ 2924(a)(6), 2924.17, 2934a(a)(1)(A)(C)(D),

22  California Business and Professions Code § 17200, *et seq*., and for the intentional infliction of

23  emotional distress.  (Id. at 16-32.)  Defendant Nationstar filed the pending motion to dismiss

24  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on April 21, 2020.  (ECF No.

25  55.)  Defendant Aztec Foreclosure Corporation, ("Aztec"), joined in Nationstar's motion to

26  dismiss on April 22, 2020.  (ECF No. 58.)  Plaintiffs filed an opposition on May 13, 2020.  (ECF

27

28  [2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

2

1  Nos. 60.)  Defendant Nationstar filed a reply on June 11, 2020.  (ECF No. 62.)  The motion to

2  dismiss was taken under submission on June 15, 2020.  (ECF No. 63.)

3  **STANDARD**

4  **I.      Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)**

5          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

6  sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

7  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

8  sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

9  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

10  relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A

11  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

12  the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

13  Iqbal, 556 U.S. 662, 678 (2009).

14          In determining whether a complaint states a claim on which relief may be granted, the

15  court accepts as true the allegations in the complaint and construes the allegations in the light

16  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

17  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

18  stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

19  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

20  form of factual allegations.  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

21  Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

22  an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A

23  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24  elements of a cause of action."  Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 676

25  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

27  facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

28  ////

3

1  not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>,

2  459 U.S. 519, 526 (1983).

3      In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted

4  to consider material which is properly submitted as part of the complaint, documents that are not

5  physically attached to the complaint if their authenticity is not contested and the plaintiff's

6  complaint necessarily relies on them, and matters of public record. <u>Lee v. City of Los Angeles</u>,

7  250 F.3d 668, 688-89 (9th Cir. 2001).

8  **ANALYSIS**

9  **I.  Estoppel**

10      Defendants argue that plaintiffs' "claims are barred by judicial and/or equitable estoppel"

11  pursuant to their bankruptcy. (Defs.' MTD (ECF No. 55) at 11.) "[W]here a party assumes a

12  certain position in a legal proceeding, and succeeds in maintaining that position, he may not

13  thereafter, simply because his interests have changed, assume a contrary position, especially if it

14  be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>Davis</u>

15  <u>v. Wakelee</u>, 156 U.S. 680, 689 (1895). This rule, known as judicial estoppel, "generally prevents

16  a party from prevailing in one phase of a case on an argument and then relying on a contradictory

17  argument to prevail in another phase." <u>Pegram v. Herdrich</u>, 530 U.S. 211, 227, n.8 (2000).

18      "In the bankruptcy context, the federal courts have developed a basic default rule: If a

19  plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and

20  obtains a discharge (or plan confirmation), judicial estoppel bars the action." <u>Ah Quin v. County</u>

21  <u>of Kauai Dept. of Transp.</u>, 733 F.3d 267, 271 (9th Cir. 2013). "Equitable estoppel precludes a

22  party from claiming the benefits of a contract while simultaneously attempting to avoid the

23  burdens that contract imposes." <u>Comer v. Micro, Inc.</u>, 436 F.3d 1098, 1101 (9th Cir. 2006).

24      Here, defendants have requested judicial notice of a "DISCHARGE OF DEBTOR" order

25  from the United States Bankruptcy Court in this district with respect to plaintiffs Christopher

26  Duenas and Maria Duenas filed on July 16, 2012. (Defs.' RJN Ex. 4 (ECF No. 56) at 79.[3])

27  _____

28  [3] The court may take judicial notice of its own files and of documents filed in other courts.
   <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking

1    According to defendants' own allegations, however, "Nationstar began servicing the Loan in

2    April 2014," and "Aztec Foreclosure Corporation substituted as DOT trustee" in December of

3    2017.  (Defs.' MTD (ECF No. 55) at 10.)  In this regard, plaintiffs' interactions with defendants

4    did not occur until after the bankruptcy proceedings concluded.  This is supported by documents

5    attached to the third amended complaint, including a copy of a January 31, 2018 correspondence

6    from Nationstar to "Chris and Maria Duenas" concerning "the mortgage loan account" for the

7    subject property.  (Third Am. Compl. (ECF No. 54) at 43.)

8            Accordingly, defendants' motion to dismiss plaintiffs' claims as barred by estoppel should

9    be denied.  See Diaz v. Nationstar Mortgage LLC, Case No. 17cv1607-MMA (BGS), 2018 WL

10   1071699, at *5 (S.D. Cal. Feb. 27, 2018) ("However, because Nationstar acquired the servicing of

11   Plaintiff's debt on June 16, 2017, and Plaintiff's Complaint alleges wrongdoing after Nationstar

12   acquired the servicing of Plaintiff's debt, Plaintiff could not have asserted a cause of action

13   against Nationstar in 2013.  Thus, the 2013 bankruptcy cannot form the basis for invoking judicial

14   estoppel.").

15   **II.    Fair Debt Collection Practices Act**

16           The fist cause of action asserted in the third amended complaint is that the defendants

17   violated 15 U.S.C. § 1692(f)(6) of the FDCPA.  (Third Am. Compl. (ECF No. 54) at 16.)  To

18   state an unlawful debt collection claim under the FDCPA the complaint "must allege facts that

19   establish the following: (1) plaintiff has been the object of collection activity arising from a

20   consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the

21   defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the

22   FDCPA."  Dang v. CitiMortgage, Inc., No. 5:11-cv-05036 EJD, 2012 WL 762329, at *3 (N.D.

23   Cal. Mar. 7, 2012).

24   ////

25   _____

26   judicial notice of documents related to a settlement in another case that bore on whether the
     plaintiff was still able to assert its claims in the pending case); Burbank–Glendale–Pasadena
     Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of
27   court filings in a state court case where the same plaintiff asserted similar and related claims);
     Hott v. City of San Jose, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of
28   relevant memoranda and orders filed in state court cases).

1     Defendants argue that "foreclosure is not collection of a 'debt'" pursuant to the FDCPA.

2   (Defs.' MTD (ECF No. 55) at 15.)  However, 15 U.S.C. § 1692f(6) of the FDCPA specifically

3   prohibits:

> 4     [t]aking or threatening to take any nonjudicial action to effect
>       dispossession or disablement of property if—(A) there is no present
> 5     right to possession of the property claimed as collateral through an
>       enforceable security interest; (B) there is no present intention to take
> 6     possession of the property; or (C) the property is exempt by law from
>       such dispossession or disablement.
> 7

8   (Id.)  Thus, § 1692f(6) "regulates nonjudicial foreclosure activity."  Dowers v. Nationstar

9   Mortgage, LLC, 852 F.3d 964, 971 (9th Cir. 2017); see also Obduskey v. McCarthy & Holthus

10  LLP, 139 S. Ct. 1029, 1036 (2019) ("No one here disputes that McCarthy is, by virtue of its role

11  enforcing security interests, at least subject to the specific prohibitions contained in § 1692f(6).");

12  Petrovich v. Ocwen Loan Servicing, LLC, 716 Fed. Appx. 614, 617 (9th Cir. 2017) ("Section

13  1692f(6) of the FDCPA does regulate nonjudicial foreclosure activity"); Vien–Phuong Thi Ho v.

14  ReconTrust Company, NA, 858 F.3d 568, 573 (9th Cir. 2017) ("section 1692f(6) would protect a

15  consumer against the abusive practices of a security enforcer who does not fit the broader

16  definition of a debt collector").

17     Nationstar cites to Dowers in support of the assertion that "[n]o claim exists under the

18  FDCPA . . . if there is no debt," arguing that because plaintiffs here "received a discharge of their

19  personal loan obligation in Bankruptcy more than five years before filing this lawsuit" there is no

20  debt.  (Defs.' MTD (ECF No. 55) at 15) (citing Dowers, 852 F.3d at 969).  The section of the

21  Dowers opinion cited by defendants, however, was addressing other provisions of the FDCPA,

22  not § 1692f(6).  See Dowers, 852 F.3d at 969 (discussing "Sections 1692c(a)(2), 1692d, and

23  1692e").

24     Nonetheless, Dowers is especially instructive here.  In Dowers, the plaintiffs purchased a

25  home in Las Vegas in 2003, by executing a Note and Deed of Trust with Bank of America, N.A,

26  ("BANA").  Id. at 968.  In 2010, the plaintiffs filed for and received a Chapter 7 Bankruptcy

27  Code discharge.  Id.  In 2013, BANA substituted MTC Financial, Inc., as the Trustee.  Id.  A

28  week later the Trustee recorded a notice of default on the plaintiffs' loan.  Id.  Pursuant to the

1   notice of default the plaintiffs and the lenders engaged in a mediation, at which "the lenders could

2   not produce the original loan documents." Id.

3       On November 13, 2013, Nationstar sent the plaintiffs in Dowers a letter stating that

4   BANA had assigned to Nationstar the servicing rights to the plaintiffs' loan. Id. Nationstar

5   proceeded to contact the plaintiffs several times in relation to their failure to pay and the potential

6   foreclosure. Id. The plaintiffs demanded Nationstar confirm that the Note owner had possession

7   of the original loan documents and moved out of Las Vegas in response to Nationstar's conduct.

8   Id.

9       The plaintiffs later sued Nationstar asserting, among other claims, a claim for violation of

10  1692f(6). Id. at 968-69. "Plaintiffs alleged that Nationstar threatened to take non-judicial action

11  to dispossess Plaintiffs of their home without a legal ability to do so." Id. at 971. Here, plaintiffs

12  also allege that the defendants are "threatening to proceed with a nonjudicial foreclosure action . .

13  . when they have no present right" to do so. (Third Am. Compl. (ECF No. 54) at 18.) In Dowers,

14  the Ninth Circuit explained that "[s]uch conduct is exactly what Section 1692f(6) protects

15  borrowers against." Id. 852 F.3d at 971. See generally Shelton v. Ocwen Loan Servicing, LLC,

16  Case No.: 18-cv-2467 AJB WVG, 2019 WL 4747669, at *14 (S.D. Cal. Sept. 30, 2019) (finding

17  allegations plaintiffs "settled and extinguished the underlying debt and the Loan . . . . sufficient to

18  state a plausible violation under section 1692f of the FDCPA.").

19      Moreover, plaintiffs' claims are not vague and conclusory, but are instead supported by

20  defendants' arguments and documents presented to the court. In this regard, defendants seek

21  judicial notice of an Assignment of Deed of Trust recorded in Solano County on November 8,

22  2011, assigning the Deed of Trust from Mortgage Electronic Registration Systems ("MERS") to

23  the Bank of New York Mellon ("BoNYM") as Trustee. (Defs.' RJN (ECF No. 56) at 29-30.[4])

24  Defendants assert that, thereafter, defendant "Nationstar began servicing the Loan in April 2014"

25  and substituted defendant Aztec as trustee in December of 2017. (Defs.' MTD (ECF No. 55) 10.)

26  _____

27  [4] "Judicial notice is appropriate for records and 'reports of administrative bodies.'" United States
    v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008)

28  (quoting Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir.
    1954)).

7

1       Plaintiffs, however, have provided a copy of an Assignment of Deed of Trust recorded on

2 August 15, 2013, in Solano County assigning the Deed of Trust from BANA to defendant

3 Nationstar.  (Third Am. Compl. (ECF No. 54) at 56.)  This assignment purported to grant

4 Nationstar "all beneficial interest under" the Deed of Trust.  (Id.)  Defendants offer nothing to

5 address this discrepancy beyond the vague and conclusory assertion that "the 2013 assignment

6 has no 'legal effect' because BANA did not then have and never had the right or ability to assign

7 the DOT."  (Defs.' MTD (ECF No. 55) at 16.)  And that the "only effective assignment of the

8 DOT is the 2011 Assignment from MERS to BoNYM[.]"  (Id. at 17.)  In this regard, plaintiffs'

9 argument that "NATIONSTAR offers no logical reason why the 2013 Assignment of Deed of

10 Trust is ineffective or if it is ineffective why was it created and subsequently recorded in the first

11 place" and has "offered no document rescinding or cancelling the 2013 Assignment of Deed of

12 Trust," is well taken.  (Pls.' Opp.'n (ECF No. 60) at 30.)

13       In short, plaintiffs have alleged defendants are attempting to foreclose on their property

14 without the legal right to do so.  Defendants claim Nationstar became the loan servicers in April

15 of 2014.  But documents before the court appear to show that two different entities—MERS and

16 BANA—each transferred the Deed of Trust to plaintiffs' property to two different entities—

17 BoNYM and Nationstar.  These transfers are confusing both as to the Deed of Trust and as to

18 whether Nationstar had a beneficial interest in the loan or was simply the loan servicer.  See

19 generally Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1038-39 (9th Cir. 2011)

20 ("After a borrower takes out a home loan, the original lender may sell all or a portion of its

21 beneficial interest in the loan and change loan servicers.  The owner of the beneficial interest is

22 entitled to repayment of the loan. . . . The servicer of the loan collects payments from the

23 borrower, sends payments to the lender, and handles administrative aspects of the loan.").

24       When analyzing a motion to dismiss court accepts as true the allegations in the complaint

25 and construes the allegations in the light most favorable to the plaintiff.  Under this standard and

26 upon this record the undersigned cannot recommend that defendants' motion to dismiss the third

27 amended complaint's FDCPA claim be granted.  See Dimock v. Emerald Properties LLC, 81

28 ////

1    Cal.App.4th 868, 876 (2000) ("there simply cannot be at any given time more than one person

2    with the power to conduct a sale under a deed of trust").  Accordingly, the undersigned

3    recommends that defendants' motion to dismiss this claim be denied.

4    **III.    California's Rosenthal Act**

5          The second cause of action asserted in the third amended complaint is a claim that

6    defendants violated California's Rosenthal Act.  (Third Am. Compl. (ECF No. 54) at 20.)

7    "California has adopted a state version of the FDCPA, called the Rosenthal Act."  Riggs v. Prober

8    & Raphael, 681 F.3d 1097, 1100 (9th Cir. 2012); see also Cal. Civ. Code § 1788 et seq.  "The

9    Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . .  and makes

10   available the FDCPA's remedies for violations."  Riggs, 681 F.3d at 1100.  "[W]hether [conduct]

11   violates the Rosenthal Act turns on whether it violates the FDCPA."  Id.  Thus, "any conduct by a

12   debt collector which violates the federal FDCPA necessarily violates the California FDCPA as

13   well."  Robinson v. Managed Accounts Receivables Corp., 654 F.Supp.2d 1051, 1060 (C.D. Cal.

14   2009).

15         Having found that defendants' motion to dismiss the FDCPA claim should be denied the

16   undersigned also finds that defendants' motion to dismiss this claim should be denied.

17   **III.    California Civil Code § 2934a**

18         The third amended complaint alleges that the defendants violated California Civil Code §

19   2934(a)(1) by improperly recording a substitution of trustee.  (Third Am. Compl. (ECF No. 54) at

20   27.)  "Under California's comprehensive statutory scheme governing non-judicial foreclosure

21   sales, the foreclosure process may be conducted by the 'trustee, mortgagee, or beneficiary, or any

22   of their authorized agents[.]'"  Hull v. Deutsche Bank National Trust Company, Case No. CV 11-

23   1095 GAF (JCGx), 2011 WL 13220225, at *3 (C.D. Cal. Mar. 8, 2011) (quoting Cal. Civ. Code §

24   2924(a)(1)).  "Section 2934a requires that, in order for a trustee to be substituted, the beneficiary

25   or the beneficiary's agent must record the substitution."  Chan Tang v. Bank of America, N.A.,

26   No. SACV 11-2048 DOC (DTBx), 2012 WL 960373, at *10 (C.D. Cal. Mar. 19, 2012).

27   ////

28   ////

9

In moving to dismiss, defendants argue that the claim:

> fails because Nationstar properly recorded the substitution of trustee as attorney-in-fact for beneficiary BoNYM. The only effective assignment of the DOT is the 2011 Assignment from MERS to BoNYM, even though plaintiffs rely on the 2013 Assignment from BANA to Nationstar. Such reliance is misplaced, because MERS assigned the DOT to BoNYM by virtue of the 2011 Assignment and BoNYM had authority to act as DOT beneficiary. The 2013 Assignment is ineffective and BoNYM remains the beneficiary under the DOT.

(Defs.' MTD (ECF No. 55) at 18.)

While it may prove true that the 2013 assignment was "ineffective," at this stage of the proceedings that remains unclear. As noted above, defendants have offered very little to explain the origin of the 2013 assignment or its ramifications. In this regard, accepting as true the allegations of the third amended complaint, the undersigned will recommend that defendants' motion to dismiss this claim be denied. See Tang, 2012 WL 960373, at *11 (denying motion to dismiss § 2934a claim where plaintiff established prima facie claim party did not have relevant authority and court "believes that it would benefit from the minimal discovery necessary to prove the agency relationship between BOA, MERS, and Sevillano during the relevant portions of 2010").

## IV.    Cal. Civ. Code §§ 2924.17, 2924(a)(6)

The third amended complaint alleges defendants violated the above two provisions of the California Homeowner Bill of Rights ("HBOR"). "Section 2924.17 provides that before recording or filing a notice of default (NOD), a notice of sale (NOS), as well as other specified documents, 'a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.'" Penermon v. Wells Fargo Bank, N.A., 47 F.Supp.3d 982, 997 (N.D. Cal. 2014) (quoting Cal. Civ. Code § 2924.17(b)). § 2924(a)(6) provides:

> An entity shall not record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. An agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust

1

2

> shall not record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

3  Plaintiffs' allegations that the defendants violated these provisions is supported by the

4  history of the apparently contradictory assignments of the deed of trust.  Again, defendants'

5  argument in support of dismissal is founded on the validity of the 2011 Assignment while

6  ignoring the ramifications of the 2013 Assignment.  (Defs.' MTD (ECF No. 55) at 18.)

7  Defendants also argues that plaintiffs' argument relies "on their flawed and incorrect contention

8  Nationstar is a 'debt collector' rather than 'true creditor[.]"  (Id.)  However, Nationstar's January

9  31, 2018 letter to plaintiffs states that "Nationstar Mortgage LLC d/b/a Mr. Cooper is a debt

10  collector."  (Third Am. Compl., Ex. B (ECF No. 54) at 43.)  Finally, defendants assert that this

11  claim must be dismissed because plaintiffs "do not reside at the property[.]"  (Defs.' MTD (ECF

12  No. 55) at 19.)  Plaintiffs' opposition, however, states that plaintiffs "have retained possession of

13  the Property and remain the owners of the Property."  (Pls.' Opp.'n (ECF No. 60) at 14.)

14  Under these circumstances, the undersigned cannot find that defendants' motion to

15  dismiss this claim should be granted and will, therefore, recommend that defendants' motion to

16  dismiss this claim be denied.

17  **V.      § 17200**

18  The amended complaint's fifth cause of actions asserts a claim pursuant to California's

19  Unfair Competition Law, Business & Professions Code § 17200, *et seq.*  (Third Am. Compl.

20  (ECF No. 54) at 29-31.)  California's Unfair Competition Law ("UCL") prohibits any "unlawful,

21  unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  § 17200

22  incorporates other laws and treats a violation of those laws as an unlawful business practice

23  independently actionable under California state law.  Chabner v. United Omaha Life Ins. Co., 225

24  F.3d 1042, 1048 (9th Cir. 2000).  "In order to state a claim for a violation of [§ 17200], a plaintiff

25  must allege that the defendant committed a business act that is either fraudulent, unlawful, or

26  unfair."  Levine v. Blue Shield of California, 189 Cal.App.4th 1117, 1136 (2010).  Moreover,

27  "[t]o state a claim for an 'unlawful' business practice under the UCL, a plaintiff must assert the

28  violation of some other law."  Welenco, Inc. v. Corbell, 126 F.Supp.3d 1154, 1178 (E.D. Cal.

1  2015); see also Pantoja v. Countrywide Home Loans, Inc., 640 F.Supp.2d 1177, 1190 (N.D. Cal.

2  2009) ("[S]ince the court has dismissed all of Plaintiff's predicate violations, Plaintiff cannot state

3  a claim under the unlawful business practices prong of the UCL.").

4       Here, the undersigned has found that the third amended complaint has stated claims which

5  constitute unlawful business practices.  Accordingly, the undersigned finds that the third amended

6  complaint also states a claim under the UCL and will recommend that defendants' motion to

7  dismiss this claim be denied.  See Penermon v. Wells Fargo Bank, N.A., 47 F.Supp.3d 982, 1002

8  (N.D. Cal. 2014) (denying motion to dismiss UCL claim where plaintiff "provided sufficient facts

9  to show that Wells Fargo's actions were unlawful under HBOR.").

10  **VI.   Intentional Infliction of Emotional Distress**

11       The third amended complaint's final cause of action asserts a claim for the intentional

12  infliction of emotional distress ("IIED").  (Third Am. Compl. (ECF No. 54) at 31-32.)  "A cause

13  of action for intentional infliction of emotional distress exists when there is (1) extreme and

14  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

15  probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

16  emotional distress; and (3) actual and proximate causation of the emotional distress by the

17  defendant's outrageous conduct."  Hughes v. Pair, 46 Cal.4th 1035, 1050 (Cal. 2009).

18       Here, the third amended complaint alleges that it was "extreme and outrageous for

19  Defendants to be attempting to collect a mortgage debt and . . . nonpayment . . . without the legal

20  right or ability to do so."  (Third Am. Compl. (ECF No. 54) at 32.)  However, "courts have found

21  as a matter of law that foreclosing on property does not amount to the 'outrageous conduct'

22  required to support a claim for intentional infliction of emotional distress."  Aguinaldo v. Ocwen

23  Loan Servicing, LLC, No. 5:12-CV-1393 EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sept. 4,

24  2012) (citing Davenport v. Litton Loan Servicing, LP, 725 F.Supp.2d 862, 884 (N.D. Cal. 2010)).

25       "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually

26  tolerated in a civilized community."  Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001

27  (Cal. 1993).  The conduct described by plaintiffs in the third amended complaint, while perhaps

28  unlawful, cannot be characterized as exceeding all bounds of that usually tolerated in a civilized

1    community.  See Mehta v. Wells Fargo Bank, N.A., 737 F.Supp.2d 1185, 1204 (S.D. Cal. 2010)

2    ("The fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not

3    occur but the house was sold anyway is not outrageous as that word is used in this context.").

4         Accordingly, the undersigned recommends that defendants' motion to dismiss the third

5    amended complaint's IIED claim should be granted.

6                                    **LEAVE TO AMEND**

7         The undersigned has carefully considered whether plaintiffs could further amend the third

8    amended complaint's IIED claim to state a claim upon which relief could be granted.  Valid

9    reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."

10   California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.

11   1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293

12   (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have

13   to allow futile amendments).

14        Here, plaintiffs have previously attempted to amend this claim without success.  In light of

15   the above analysis and plaintiffs' prior attempts to amend, the undersigned finds that granting

16   plaintiffs further leave to amend the IIED claim would be futile.

17                                     **CONCLUSION**

18        Accordingly, IT IS HEREBY RECOMMENDED that:

19        1.  Defendants' April 21, 2020 motion to dismiss (ECF No. 55) be granted as to the third

20   amended complaint's IIED claim;

21        2.  The third amended complaint's IIED claim be dismissed without further leave to

22   amend;

23        3.  Defendants' motion to dismiss be denied in all other respects; and

24        4.  Defendants be ordered to file an answer within fourteen days of the date of any order

25   adopting these findings and recommendations.

26        These findings and recommendations are submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

28   being served with these findings and recommendations, any party may file written objections with

                                             13

the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 21, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.pro se/ponthieux0608.mtd2.f&rs

14